IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

MARK E. MILLER

            Plaintiff,

v.                                        CIVIL ACTION NO. 2:06-0113

CSX TRANSPORTATION,

            Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are two motions for Partial Summary Judgment. The Plaintiff's Motion for Partial Summary Judgment seeks a determination by the Court that the evidence regarding the cause of the accident is undisputed, and therefore shows Defendant violated the *Federal Locomotive Inspection Act* ("FLIA"). Plaintiff asks the Court to determine that Defendant is therefore liable to Plaintiff under FLIA. Defendant's Motion for Partial Summary Judgment seeks a determination that the locomotive where the accident occurred was not "in use" as required under FLIA, and therefore that claim must be dismissed.

For the reasons stated below, the Court **DENIES** Plaintiff's Motion for Partial Summary Judgment and **GRANTS** Defendant's Motion for Partial Summary Judgment. Locomotive 56 was not "in use" as required under the FLIA and therefore that claim must be dismissed.

*Statement of the Case*

Plaintiff Mark Miller had been employed by CSX Transportation ("CSX") since 1981, and was employed on the day of the accident. On June 23, 2003 Plaintiff was assigned to the Peach Creek Facility ("Peach Creek"). Plaintiff's assignment was to get two locomotives, numbers 56 and

311, off the running track and ready for movement. Locomotive 311 was defective and could not operate as a lead engine. Plaintiff and conductor Jones therefore maneuvered the locomotives so 56 was the lead car and 311 was the trailing locomotive. The two locomotives were then coupled to 90-plus cars that were waiting on track 4. (Miller Dep. 84-85; Jones Dep. 10-11). A brakeman performed the air break test on locomotive 56. Plaintiff and conductor Jones were originally ordered to take the trains to Rum Creek, although since they could not be used for the Rum Creek job, another crew from Russell was coming in to move the trains. (Miller Dep. 86-87; Jones Dep. 11). Plaintiff and Jones were to return to use other locomotives, on track 1 or 2 for their assigned run, after repositioning locomotives 56 and 311. (Miller Dep. 88; Jones Dep. 14-15). Jones had already gone to the Rum Creek bound locomotives to begin preparation for departure while Plaintiff completed his tasks on locomotive 56. (Miller Dep. 107; Jones Dep. 14-15).

Plaintiff suffered his injury while exiting locomotive 56. Plaintiff walked out of the back door of locomotive 56, when he felt a tug on his boot and fell off the locomotive. Plaintiff did not notice anything on the floor, and did not know what he tripped on before the fall. He lost consciousness. Conductor Jones was the first person to find Plaintiff, and soon after Mr. Perry, an assistant trainmaster, arrived. (Jones Dep. 18-23). Jones showed Perry that there was something stuck to the bottom of Plaintiff's foot. (Jones Dep. 23). Perry pulled the piece of reflective tape off the bottom of Plaintiff's shoe, which was "stuck pretty good." (Jones Dep. 25). Trainmaster Perry concluded that the tape was the cause of the accident and was originally located, over a battery in the locomotive walkway. The CSXT Root Cause Analysis noted Trainmaster Perry's statements, and an inspection by the Mechanical Department, that found the area where the anti-skid tape was missing, in the Report.

Plaintiff filed suit in the Eastern District of Pennsylvania, on November 7, 2005. On February 15, 2006 the case was transferred to this Court. Plaintiff sued CSX for negligence under the *Federal Employers Liability Act* ("FELA"), 45 U.S.C. § 51, et seq., alleging injury from his fall, as well as a claim under FLIA, 49 U.S.C. § 20107, et seq. Plaintiff alleges that Defendant is liable under FELA as a result of a violation of FLIA.

In its claim under FLIA, Plaintiff argues that the placement of the anti-skid tape made the walkway unsafe. Plaintiff states that it is unsafe to have batteries located under the walkway because of corrosive properties of the batteries, as well as specific harms to the anti-skid tape, such as an uneven surface over the batteries and the heat generated by the batteries that would melt the tape. Plaintiff argues that the tape must be placed on a smooth clean surface, not a surface such as a battery cover. Further, any piece of tape could become a tripping hazard and therefore make the passageway unsafe for employees. Defendant argues that FLIA does not apply since the locomotive was not "in use" as required under the Act.

### *Standard of Review*

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(c). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

### *Discussion*

Under FLIA, a rail carrier may use a locomotive when "its parts and appurtenances – (1) are in proper condition and safe to operate without unnecessary danger of personal injury." 49 U.S.C. § 20701. The Federal Railroad Administration ("FRA") promulgated regulations that articulate the railroad's obligations to provide a safe working environment. It is the railroad's responsibility to inspect and test to confirm the locomotive and appurtenances, "[a]re in proper condition and safe to operate in the service to which they are put, without unnecessary peril to life or limb." 49 C.F.R. § 229.7. Further, a regulation states that "passageways. . .shall be kept free from. . .any obstruction that creates a slipping, tripping or fire hazard." *See* 49 C.F.R. § 229.119. Plaintiff argues that strict liability is created under FLIA, therefore proof of a violation of a regulation is proof of negligence as a matter of law. *Lilly v. Grand T. W. R. Co.*, 317 U.S. 481, 485 (1943) ("Negligence is not the basis for liability under the Act. Instead, it 'imposes upon the carrier an absolute and continuing duty to maintain the locomotive, and all parts and appurtenances thereof, in proper condition, and safe to operate . . . without unnecessary peril to life or limb.'"); *O'Donnell v. Elgin, J. & E. R. Co.*, 338

U.S. 384, 390 (1949) (describing the Court's decisions that "a failure of equipment to perform as required by the Safety Appliance Act is in itself an actionable wrong.").

A locomotive is subject to FLIA, and therefore Defendant is subject to strict liability, only when it is "in use." *Deans v. CSX Transp., Inc.*, 152 F.3d 326, 328 (4th Cir. 1998).[1] Since the two opposing motions are based on FLIA, the determination of whether locomotive 56 was "in use" becomes somewhat dispositive. If the locomotive was not "in use" the FLIA claim cannot go forward and the Court does not address the factual issues of the cause of the accident.

Determining whether the locomotive is "in use" is a question of law. *Id.* at 329. The Fourth Circuit has rejected the bright line rule of Fifth Circuit, whereby the review is simply a matter of what stage of departure the train is in at the time of the accident. *Id.* (citing *Trinidad v. Southern Pacific Transp. Co.*, 949 F.2d 187 (5th Cir. 1991)). The Fifth Circuit places the line of liability at the final inspections of the train; before completion of the inspections, the train is not in use, after inspection and before departure the train is in use. *Id.* In rejecting the bright line rule, the Fourth Circuit requires a review of the surrounding circumstances of the train and the stages of departure, to determine if the departure was "imminent." *Id.*; *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 289 (4th Cir. 1999). With "the primary factors [to] consider are where the train was located at the time of the accident and the activity of the injured party." *Deans*, 152 F.3d at 329. When the train is running and has completed all of its pre-departure tests, whether the employee was on the

---

[1] The Court notes that the statute at issue in *Deans* and *Phillips* is under the Federal Safety Appliance Act, although courts have indicated that the language is the same for the Boiler Inspection Act, the precursor to the Federal Inspection Act, at issue in this case. *See Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 288 n.2 (4th Cir. 1999) (citing *Angell v. Chesapeake & Ohio Ry. Co.*, 618 F.2d 260, 262 (4th Cir. 1980)).

transportation crew becomes a factor in whether the train's departure was imminent and therefore whether it was in use. *Phillips*, 190 F.3d at 289-90.[2]

In this case, Plaintiff and conductor Jones maneuvered locomotives 56 and 311, coupled the locomotives to 90-plus cars that were waiting on track 4, an air break test was performed, and Plaintiff and conductor Jones were originally ordered to take the trains to Rum Creek. Had the accident not occurred locomotive 56 would have been moved, although not by Plaintiff. The issue of the imminence of the departure is intertwined with whether Plaintiff was on the transportation crew.

Plaintiff repeats the refrain that Miller and his co-workers' assignment was "to get 56 and another engine, and we were going to get them and take them, you know, go get some engines out of the yard and go to Rum Creek." (Miller Dep. 71). While this might have been the original assignment there is sufficient evidence, even when read in a light most favorable to Plaintiff, that Miller and Jones were later assigned to take a different locomotive to Rum Creek. Locomotive 56 was faced West, to go to Russell or Huntington, and the locomotive that Jones had boarded and was waiting for Miller to board was facing East, toward Rum Creek. (Miller Dep. 73, 85, 87-88; Jones Dep. 14-16). A crew from Russell was coming out to the yard to move locomotive 56 where Miller had his accident. (Miller Dep. 86-87). Miller was not the transportation crew for the locomotive

---

[2] Plaintiff urges the Court to consider a new explanation of "in use" proposed by FRA as, "when a locomotive is capable of being used. . .when a locomotive has been inspected, or a locomotive is on a ready track." *See* FRA, Notice of Proposed Rulemaking, 72 Fed. Reg. 9904, 9909 (March 6, 2007). This description of the term relates to "a general requirement that . . . [a]ny time a locomotive is in use before leaving the initial terminal it will be required to have operative sanders." *Id*. The Rule has not yet been commented on or adopted and it does not conflict with the discussion of the Fourth Circuit on this subject. The Court will follow Fourth Circuit precedent in this discussion.

56, and with no evidence that the Russell crew was even on the yard, it is clear locomotive 56's departure might have been eventual, but it was not imminent.

The locomotive where Miller suffered his accident was not "in use" and therefore FLIA does not apply to this case and the claim must be dismissed. Plaintiff's negligence claim under FELA is still viable, as far as it does not rely on the FLIA claim.

### *Conclusion*

For the aforementioned reasons Plaintiff's Motion for Partial Summary Judgment is **DENIED** and Defendant's Motion for Partial Summary Judgment is **GRANTED**. The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: April 10, 2007

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE